

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
ATTORNEY GENERAL

February 18, 1958

Dr. Raleigh R. Ross, M. D.
Chairman
Board for Texas State Hospitals
   and Special Schools
Austin, Texas

Opinion No. WW-376

Re: Whether the Board for Texas
State Hospitals and Special
Schools is authorized to
supplement the salary of the
Executive Director of the
Board.

Dear Dr. Ross:

We quote from your request for an opinion as follows:

"This Board has been attempting for many months
to employ an Executive Director capable of carrying
out the duties and policies of this Board. Due to
the diverse duties imposed by law in managing the
State's mental hospitals, tuberculosis hospitals and
special schools, it has been impossible for us to
find a person with the necessary qualifications at
the salary authorized in the current appropriation
bill.

"In addition to the above, the Executive Direc-
tor is now charged with the new and supplemental duty
of conducting an extensive research program and oper-
ation of several outpatient clinics.

"In order for this Board to carry out its
responsibilities to the State of Texas and its
patients and special students, particularly in the
new, added and supplemental work fields occasioned
by the various outpatient clinics and research pro-
gram, it is essential that a person be employed who
is capable of directing these various affairs.

"A Texas charitable foundation has expressed
an interest in donating funds to the Board for the

maintenance and operation of the research and
out-patient clinic programs, and wishes to stipu-
late that the Board, in its discretion, may use the
donated funds for supplementing the salaries of
personnel in charge of these programs, if the use
of the funds for this purpose would be lawful.

"Therefore, your opinion is respectfully re-
quested as to whether or not this Board may supple-
ment the salary of the Executive Director from
donated funds."

The Board is authorized by general statute to accept
and disburse gifts from private sources.  Article 693, Vernon's
Civil Statutes, pertaining to the powers and duties formerly
vested in the Board of Control with respect to eleemosynary
institutions, provides in part:

"8.  It may take and hold in trust any gift or
devise of real or personal estate for the benefit of
such institution and apply the same as the donor or
devisor may direct."

This power is now vested in the Board for Texas State
Hospitals and Special Schools by virtue of the provision in
Section 2 of Chapter 316, Acts of the 51st Legislature, Regular
Session, 1949, which reads:

". . . Effective September 1, 1949, the control
and management of, and all rights, privileges, powers,
and duties incident thereto including building, de-
sign and construction of the Texas State Hospitals
and Special Schools which are now vested in and
exercised by the State Board of Control shall be
transferred to, vested in, and exercised by the
Board for Texas State Hospitals and Special Schools.
. . ."

In this opinion we shall assume that the donations
will be made to the Board in accordance with Article 693.  While
this Article does not specifically authorize the Board to use
donated funds for payment of salaries, we think the language
used therein is sufficiently broad to give such authorization,
provided same does not contravene the provisions of any other
applicable statute.

We need not concern ourselves with the question of
whether the donated funds would be subject to legislative appro-
priation pursuant to Section 6 of Article VIII of the Constitu-
tion of Texas, for we in fact have an appropriation which we be-
lieve is applicable to the limited situation presented by your

request. In the current Biennial Appropriation Act (Acts 55th Leg., R.S., 1957, ch. 385, p. 907), there is the following provision under the heading of "RESEARCH, TRAINING, AND OUT-PATIENT FACILITIES":

> "The Hospital Board is authorized to accept any gifts, grants, or donations, real property or facilities, for the maintenance and operation of the Research Facilities or Out-Patient Clinics; and such gifts, grants, or donations are appropriated for the purposes for which the donor stipulates, except such gifts shall not be used for traveling expenses of personnel employed at such facilities."

It is significant that the only restriction placed upon the use of the subject funds in connection with the operation of research facilities or out-patient clinics is that such funds may not be used for traveling expenses of personnel employed at such facilities. Implicit in this single restriction is the conclusion that such funds were appropriated for all other maintenance and operational costs, including the payment of salaries of personnel connected therewith.

Chapter 4, Acts of the 55th Legislature, R.S., 1957, provides that the salaries of state officers and employees for the current biennium shall be in such sums or amounts as may be provided for by the Legislature in the General Appropriations Act. The current Biennial Appropriation Act sets the salary of the Executive Director of the State Hospital Board at $15,000.00 for each year of the biennium. This fact alone, however, does not preclude the payment of additional compensation to the Director from gifts and donations. Attorney General's Opinion No. V-1476, written in 1952, concerned the legality of supplementing the compensation of the Comptroller of The University of Texas, from funds derived from gifts and bequests. Chapter 455, Acts of the 52nd Legislature, R. S., 1951, contained the same provision, applicable to salaries for the 1951-1953 biennium, as Chapter 4 of the 55th Legislature, supra. The General Appropriation Bill, then in effect, set the salary of the Comptroller at $12,500.00 per year. There were other provisions in the Act, which provided:

> "The expenditure of the appropriations herein made and authorized, whether from the State General Revenue Fund, local institutional funds, or any other receipts and funds whatsoever, except bequests and gifts, shall be subject to the following provisions:
>
> " . . .
>
> "Sec. 24. Additional Salary Payments. No

institution of higher education shall pay in
excess of the salary rates specified for the
itemized positions in this Article, excepting
only those which are designated as 'part-time.'"
(Emphasis added.)

The Opinion concluded, after considering the foregoing
provisions of the Appropriation Act, that the Legislature intend-
ed to limit the amount of money that might be paid as salaries to
these full-time administrative officials from funds derived
from any source except gifts and bequests. The Opinion accord-
ingly held that the proposed salary supplementation was auth-
orized.

Attorney General's Opinion No. WW-211 (1957) concerned
the construction of an item in the appropriation bill which
authorized the Central Education Agency to accept gifts, grants
or allotments from the United States Government and to appropriate
such funds for the "specific purposes authorized" by the Govern-
ment or other donor. The Opinion held that such funds could be
expended by the Agency as authorized by the Government or donor,
and other provisions of the appropriation bill which limited the
number of personnel employed in a particular category and set
salary maximums therefor, did not apply to the expenditure of
such funds, so long as such expenditures were in accordance with
the terms of the contract entered into between the Agency and
the party making the gift or grant.

We believe that the reasoning of the foregoing Opinion
is applicable to your specific question. In appropriating gifts
received for the operation of research facilities and out-patient
clinics for the purpose for which the donor stipulates, the
Legislature has manifested a clear intent that the funds so
received and appropriated are in addition to and supplementary
of the funds otherwise appropriated for such purposes.

One further statute should be considered. Section 3(k)
of House Bill 3, Chapter 100, Acts of the 55th Legislature,
Regular Session, 1957, provides:

"(k) No officer or employee of a state agency,
Legislator, or legislative employee shall receive
any compensation for his services as an officer or
employee of a state agency, Legislator or legisla-
tive employee from any source other than the State
of Texas, except as may be otherwise provided by
law."

We have concluded above that the General Appropriation
Act authorizes the use of donated funds for supplementation of

salaries in connection with research and out-patient facilities.
If this authorization is in conflict with Chapter 100, it is
invalid as an attempt to modify or repeal a general law. State
v. Steele, 57 Tex. 200 (1882); Moore v. Sheppard, 144 Tex. 537,
192 S.W.2d 559 (1946); Attorney General's Opinions V-412 (1947),
V-1254 (1951) and WW-96 (1957). However, we are of the opinion
that this provision of the Appropriation Act is not in conflict
with Chapter 100.

The above quoted Section 3(k) is a part of the code of
ethics for state officers and employees enacted by the 55th Legis-
lature. Section 1 of the Act states the purpose of the Act as
follows:

"Section 1. Declaration of policy. It is
hereby declared to be the policy of the Legisla-
ture that no officer or employee of a state agency,
Member of the Legislature or legislative employee
should have any interest, financial or otherwise,
direct or indirect, or engage in any business or
transaction or professional activity or incur any
obligation of any nature which is in substantial
conflict with the proper discharge of his duties
in the public interest. To implement such policy
and to strengthen the faith and confidence of the
people of Texas in their Government, there is hereby
enacted a code of ethics setting forth standards of
conduct to be observed by state officers and em-
ployees in the performance of their official duties.
It is the intent of the Legislature that this code
shall serve not only as a guide for official con-
duct of the State's public servants but also as
a basis for discipline of those who refuse to abide
by its terms."

Section 3(k) prohibits an officer or employee from receiv-
ing compensation from any source other than the State of Texas, ex-
cept as may be otherwise provided by law. Would the salary supple-
mentation be received from the State of Texas, within the meaning
of that phrase as used in this section, or is the supplementation
"otherwise provided by law"? In either event, it would not be in
violation of the Code.

The Board has the discretion to accept or refuse private
donations which are tendered to it. We may assume that the Board
will accept donations only after due deliberation and determina-
tion that the source of the donation and the conditions attached
to its use would not be inimical to the interests of the State
Government and the public welfare. The trust funds are held for
disbursement on order of the Board and the donor loses all con-

trol over their expenditure so long as the conditions of their use are complied with.  Our conception of the purpose of Section 3(k) is to prevent an employee from exposing himself to obligation to or influence by individuals or groups whose interests might conflict with his fealty to the State and to the public. In receiving the salary supplement the employee would be dealing solely with the Board, and so far as he is concerned the source of payment would be the Board acting as an agency of the State of Texas.  By the donation the trust funds lose their character as private funds and become public funds under the direct control of the State agency administering them.  See Attorney General's Opinion V-1365 (1951).  This being true, it is our opinion that the source of compensation would be the State of Texas within the meaning and spirit of Section 3 (k).  But if we are wrong in this, the payment would nevertheless come within the exception as being "otherwise provided by law."

As already noted, there was legislative authorization for the payment of salaries from donations under the law existing at the time of enactment of the Code of Ethics.  The exception in Section 3 (k) recognized and preserved all those provisions which sanctioned payment of compensation from other sources.  To our mind, this is the clear meaning of the exception.  It may be observed, further, that any other meaning would place the 55th Legislature in the position of condemning as unethical the acts of prior Legislatures which enacted these provisions.  In adopting the Code of Ethics the 55th Legislature was not presuming to create a new and original concept of ethical behavior.  The Code is but an articulation of standards inherent in the duty of public employees to preserve the integrity of their employment.  It is a reduction to written form of principles already embedded in the public conscience, so that persons less sensitive to those principles or less responsive to the restraints of conscience will know what standard of behavior the State demands of its employees. It would require a much plainer negation than is found in Section 3 (k) to say that the Legislature intended to condemn as unethical a course of conduct theretofore considered ethical or to forbid acts which had been authorized by prior Legislatures.  The conclusion that the 55th Legislature did not intend in Chapter 100 to prohibit payment or supplementation of salaries from donations received by State agencies is further borne out by the fact that the only restriction which the 55th Legislature placed on the expenditure of funds donated for research and out-patient facilities is in the payment of traveling expenses.

We are, therefore, of the opinion that the Board may, in its discretion, supplement the salary of the Executive Director from gifts or grants received by the Board for the purpose of maintaining and operating research facilities

and out-patient clinics, provided such supplementation is consistent with the purposes of such grants or gifts as specified by the donor. The amount of such supplementation may be set by the Board, but should be commensurate with the special duties performed by the Director in connection with the maintenance and operation of research facilities and out-patient clinics.

As you have pointed out in your request, the Board is confronted with the pressing problem of obtaining the services of a trained and capable specialist who cannot only accomplish the usual administrative duties of his post, but who can also give special attention and effort to the establishment and maintenance of recently authorized out-patient clinics and the improvement of hospital research facilities. The executive chosen will perform duties in connection with these clinics and facilities which, under ordinary circumstances, would not be incumbent upon this position. He will not be assuming an additional position, but additional duties, in this connection, will be transferred to the position of Executive Director.

We wish to emphasize that the scope of this opinion is necessarily limited to the particular question submitted, and the answer to said question is grounded upon statutory authority which is not necessarily applicable to other positions or situations.

## SUMMARY

The Board for Texas State Hospitals and Special Schools may, in its discretion, supplement the compensation of the Executive Director of the Board from gifts or grants received by the Board for the purpose of maintaining and operating research facilities and out-patient clinics, provided such supplementation is consistent with the purposes of such grants or gifts as specified by the donor. The amount of such supplementation may be set by the Board, but should be commensurate

with the special duties per-
formed by the Director in
connection with the maintenance
and operation of research
facilities and out-patient
clinics.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Leonard Passmore
Leonard Passmore
Assistant

LP:jl:zt

APPROVED:

OPINION COMMITTEE

J. C. Davis, Chairman

Cecil C. Rotsch

Mary K. Wall

REVIEWED FOR THE ATTORNEY GENERAL

BY: W. V. Geppert